PJS:MJB:mel

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEMETRIUS HILL,** | : | No. 4:13-CV-0668 |
| **NESTOR CERCET,** | : | |
| **ANTHONY WASHINGTON,** | : | |
| **KEVIN LAWSON,** | : | |
| **MARVIN CASTELLANO** | : | |
| **EDUARDO, ROSCOE L. ALFORD,** | : | |
| **JOHN LEGRAND, and** | : | |
| **ERIC GAY (SHU PRISONERS),** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Brann, J.)** |
| | : | |
| **WARDEN DAVID EBBERT,** | : | |
| **et al.,** | : | |
| **Defendants** | : | **Filed Electronically** |

## <u>STATEMENT OF MATERIAL FACTS</u>

Defendants, by and through their counsel and pursuant to Local Rule 56.1, hereby submit the following statement of undisputed material facts in support of their Motion for Summary Judgment.  Plaintiffs Demetrius Hill, Nestor Cercet, Anthony Washington, Kevin Lawson, Marjin Castellano Eduardo, Roscoe L. Alford, John F. Legrand, and Eric Gay, are advised that, pursuant to Local Rule 56.1, all facts set forth in this statement will be deemed admitted unless those facts specific to each of them are controverted by them with references to the record supporting their position.

A.     **Plaintiff Demetrius Hill**

1.     Bureau of Prisons records reflect that Hill arrived at USP Canaan on January
       14, 2013.  See Declaration of Kimberly Sutton (Ex. 1) at 236, Inmate History-
       Admission-Release (Attach. 1q to Ex. 1).

2.     USP Canaan was in lockdown between February 25, 2013, and April 8, 2013.
       See Sutton Decl. (Ex. 1), ¶ 3.

3.     Between February 25, 2013 (the first day of the lockdown at USP Canaan), and
       September 12, 2014 (when the search was conducted), Hill submitted 55
       administrative remedy requests and/or appeals.   See Sutton Decl. (Ex. 1),
       ¶¶ 18-19; Administrative Remedy Generalized Retrieval (Attach. 1i to Ex. 1) at
       74-129.

4.     Twenty-one (21) of Hill's administrative remedy submissions were received
       during the institution lockdown at USP Canaan from February 25, 2013, and
       April 8, 2013.  See Sutton Decl. (Ex. 1), ¶¶ 18-19; Administrative Remedy
       Generalized Retrieval (Attach. 1i to Ex. 1) at 74-94.

5.     On March 5, 2013, while USP Canaan was in lockdown, Hill filed three
       separate administrative remedy requests at the institutional level concerning a
       new pencil and daily access to a pencil sharpener (Remedy ID 723894-F2,
       attached to page 4 of Ex. 2 as Attach. 2a), permission to possess 12 inches of
       legal materials in his cell (Remedy ID 726125-F1, attached to page 9 of Ex. 2 at
       Attach. 2b), and a refill of his prescription (Remedy ID 726126-F1, attached to

page 14 of Ex. 2 as Attach. 2c).  See Sutton Decl. (Ex. 1) ¶19; Administrative

Remedy Generalized Retrieval (Attach. 1i to Ex. 1) at 74-76.; see also

Declaration of Erika Fenstermaker (Ex. 2) ¶ 2.

6.     On March 8, 2013, while USP Canaan remained in lockdown, Hill filed four

separate administrative remedy requests at the institutional level concerning a

legal phone call (Remedy ID 726192-F1, attached to page 19 of Ex. 2 as

Attach. 2d), requesting reading books from the Special Housing Unit book cart

(Remedy ID 726193-F1, attached to page 24 of Ex. 2 as Attach. 2e), seeking a

threat assessment and transfer claiming several of his separatees were at USP

Canaan  (Remedy ID 726203-F1, attached to page 29 of Ex. 2 as Attach. 2f),

and complaining that he was unable to print cases from the SHU library

computer (Remedy ID 726204-F1, attached to page 34 of Ex. 2 as Attach. 2g).

See Sutton Decl. (Ex. 1) ¶19; Administrative Remedy Generalized Retrieval

(Attach. 1i to Ex. 1) at 77-80; Fenstermaker Decl. (Ex. 2) ¶ 2.

7.     On March 22, 2013, while USP Canaan remained in lockdown, Hill filed 11

separate administrative remedy requests at the institutional level concerning

email to the Office of Inspector General to report a sexual assault (Remedy ID

727500-F1, attached to page 40 of Ex. 2 as Attach. 2h), the opening/reading of

media and legal mail by SHU staff (Remedy ID 727501-F1, attached to page 45

of Ex. 2 as Attach. 2i), SHU staff's refusal to turn off the cell light (Remedy

IDs 727502-F1, 727503-F1 and 727505-F1, attached to pages 50, 55, 65 of Ex.

2 as Attachs. 2j, 2k, 2m, respectively), the PLRA filing fee that should not have been taken from his account (Remedy ID 727504-F1, attached to page 60 of Ex. 2 as Attach. 2l), a request to view the administrative remedy index (Remedy ID 727507-F1, attached to page 70 of Ex. 2 at Attach. 2n).  In addition, he filed the following rejected remedies: an increase in medication and use of a nebulizer (Remedy ID 727818-F1); use of the law library (Remedy ID 727823-F1); cold food (Remedy ID 727823-F1); and the destruction of property (Remedy ID 727825-F1).  See Sutton Decl. (Ex. 1) ¶19; Administrative Remedy Generalized Retrieval (Attach. 1i to Ex. 1) at 81-91; Fenstermaker Decl. (Ex. 2) ¶ 2.[1]

8.   On April 1, 2013, while USP Canaan remained in lockdown, Hill filed two separate administrative remedy requests at the institutional level concerning blankets (Remedy ID 728523-F1, attached to page 76 of Ex. 2 as Attach. 2o) and underwear (Remedy ID 728525-F1, attached to page 81 of Ex. 2 as Attach. 2p).  See Sutton Decl. (Ex. 1) ¶19; Administrative Remedy Generalized Retrieval (Attach. 1i to Ex. 1) at 92-93; Fenstermaker Decl. (Ex. 2) ¶ 2.

---

[1] Because the BOP rejected Remedy IDs 727818-F1, 727821-F1, 727823-F1, and 727825-F1, see Sutton Decl. (Ex. 1), ¶19; Administrative Remedy Generalized Retrieval (Attach. 1i to Ex. 1) at 88-91; they were returned to Hill with a rejection notice.  See Sutton Decl. (Ex. 1) at 7, n.1.  While the BOP's administrative remedy tracking system assigns each administrative remedy a case number, hard copies of rejected submissions are not maintained.  See id.  For this reason, copies of these four rejected administrative remedy requests are not available.

9.      On April 5, 2013, while USP Canaan remained in lockdown, Hill filed an
        administrative remedy request at the institutional level concerning cold food
        (Remedy ID 727823-F2, attached to page 88 of Ex. 2 as Attach. 2q).  See
        Sutton Decl. (Ex. 1), ¶19; Administrative Remedy Generalized Retrieval
        (Attach. 1i to Ex. 1) at 94; Fenstermaker Decl. (Ex. 2) ¶ 2.

10.     Prison staff received thirty-four (34) of Hill's administrative remedy
        submissions after the institution lockdown.  See Sutton Decl. (Ex. 1), ¶¶ 18-20;
        Administrative Remedy Generalized Retrieval (Attach. 1i to Ex. 1) at 95-129;
        Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Docs. 2r
        – 2u) at 92-113.

11.     To date, Hill has filed no Regional or Central Office appeals regarding any issue
        raised in this civil action.  See Sutton Decl. (Ex. 1), ¶¶ 18-19; Administrative
        Remedy Generalized Retrieval (Attach. 1i to Ex. 1) at 74-129.

12.     Bureau of Prisons records reflect that Hill departed USP Canaan on May 6,
        2013.  See Sutton Decl. (Ex. 1) at 236, Inmate History- Admission-Release
        (Attach. 1q to Ex. 1).

13.     Hill is currently incarcerated at the United States Penitentiary in Lewisburg,
        Pennsylvania, on writ.  See Sutton Decl. (Ex. 1) ¶¶ 4, 20; Inmate History-
        Admission-Release (Attach. 1q to Ex. 1) at 236.

**B.**     **Plaintiff Nestor Cercet**

14.    Plaintiff Cercet's administrative remedy records reflect that he submitted seventeen (17) administrative remedy requests and/or appeals during his federal incarceration.  See Sutton Decl. (Ex. 1), ¶¶ 21-22; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 132-148.

15.    Prison staff received four of Cercet's administrative remedy submissions before the institution lockdown even commenced on February 25, 2013.  See Sutton Decl. (Ex. 1), ¶¶ 21-22; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 132-135.

16.    Two of Cercet's administrative remedy submissions were received during the institution lockdown (February 25, 2013 to April 8, 2013).  See Sutton Decl. (Ex. 1), ¶¶ 21-23; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 136-137 (Remedy IDs 726749-R1 and 726749-A1).

17.    Staff rejected both of Cercet's administrative remedy submissions received during the institution lockdown.  See id.

18.    Prison staff received Cercet's remaining 11 administrative remedy submissions after the institution lockdown ended on April 8, 2013.  See Sutton Decl. (Ex. 1), ¶¶ 21-22; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 138-148.

19.    Seven of the administrative remedy submissions received after the institution lockdown were rejected.  See Sutton Decl. (Ex. 1), ¶¶ 22-23; Administrative

6

Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 139-143, 147-48 (Remedy IDs 731557-R1, 733068-F1, 733489-F1, 733594-R1, 733595-R1, 737304-F1 and 733489-R1).

20.     The four remaining administrative remedy submissions of Cercet's which were received after the institution lockdown were denied on the merits. <u>See</u> Sutton Decl. (Ex. 1), ¶¶ 22, 24; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 138 (Remedy ID 730670-F1), 144 (Remedy ID 733068-F2), 145 (Remedy ID 730670-R1) and 146 (Remedy ID 734590-F1); Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Docs. 2v – 2x) at 115-130.

21.     Remedy ID 730670-F1 received an explanation at the institutional level and a denial by the Regional Office. <u>See</u> Sutton Decl. (Ex. 1) at 12; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 138; Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Docs. 2v) at 115-120.

22.     Cercet did not submit an appeal to the Central Office of 730670. <u>See</u> Sutton Decl. (Ex. 1) at 14; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 138-148.

23.     Remedy ID 733068-F2 received an explanation at the institutional level. <u>See</u> Sutton Decl. (Ex. 1) at 14; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 145; Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Attach.  2w) at 122-125.

24.   Cercet did not submit an appeal to either the Regional Office or the Central Offices concerning 733068.  <u>See</u> Sutton Decl. (Ex. 1) at 14; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 138-148.

25.   Remedy ID 734590-F1 received an explanation at the institutional level.  <u>See</u> Sutton Decl. (Ex. 1) at 14; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 146; Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Attach.  2w) at 127-130.

26.   Cercet did not submit an appeal to either the Regional Office or the Central Offices of 734590.  <u>See</u> Sutton Decl. (Ex. 1) at 14; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 138-148.

27.   Cercet was released from Bureau of Prisons custody on November 5, 2013.  <u>See</u> Sutton Decl. (Ex. 1) ¶ 5.

28.   Cercet has not kept the Court informed of his address.  <u>See</u>  U.S. District Court Civil Docket (Ex. 3).

29.   Cercet has not paid any monies toward the balance of his filing fee since November 12, 2013.  <u>See</u> <u>id.</u>

C.   **Plaintiff Anthony Washington**

30.   Plaintiff Washington is incarcerated at USP Canaan.  <u>See</u> Sutton Decl. (Ex. 1), ¶ 6.

31.   Washington's administrative remedy records reflect that during his federal incarceration, he filed 14 administrative remedy requests and/or appeals.  <u>See</u>

8

Sutton Decl. (Ex. 1) ¶ 25; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 151-165.

32.    Prison staff did not receive Washington's 14 administrative remedy submissions before the institution lockdown began on February 25, 2013.  See id.

33.    Two of Washington's administrative remedy submissions were received during the institution lockdown between February 25, 2013 and April 8, 2014.  See Sutton Decl. (Ex. 1) ¶ 25; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 151-152.

34.    Prison staff received twelve of Washington's administrative remedy submissions after the institution lockdown.    See Sutton Decl. (Ex. 1) ¶ 25; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 153-164.

35.    Of the 14 administrative remedy submissions, the BOP rejected 9.  See Sutton Decl. (Ex. 1) ¶ 25; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 151-155, 158-159, 162-163.

36.    The BOP denied the five remaining administrative remedy submissions, which were received after the institution lockdown, on the merits.  See Sutton Decl. (Ex. 1), ¶¶ 25; Remedy ID 733070-F1, Attach. 1k to Ex. 1 at 156, Remedy ID 733066-F1), id. at 157; Remedy ID 729960-F3, id.  at 160; (Remedy ID 735155-F1), id. at 161; Remedy ID 742590-F1, id. at 164.

37. The BOP denied Remedy ID 733070-F1 at the institutional level.  <u>See</u> Sutton Decl. (Ex. 1) at 18; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 156; Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Attach.  2y) at 132-135.

38. Washington did not submit an appeal to the Regional or Central Offices of 733070.  <u>See</u> Sutton Decl. (Ex. 1) at 18; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 151-164.

39. Staff denied Remedy ID 733066-F1 at the institutional level.  <u>See</u> Sutton Decl. (Ex. 1) at 18; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 157; Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Attach.  2z) at 137-140.

40. Washington did not submit an appeal to the Regional or Central Offices for Remedy ID 733066.  <u>See</u> Sutton Decl. (Ex. 1) at 18; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 151-164.

41. Remedy ID 729960-F3 was denied at the institutional level.  <u>See</u> Sutton Decl. (Ex. 1) at 18; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 160; Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Attach. 2aa) at 142-147.

42. Washington did not submit an appeal to the Regional or Central Offices of 729960.  <u>See</u> Sutton Decl. (Ex. 1) at 18; Administrative Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 151-164.

10

43.     Remedy ID 735155-F1 received an explanation at the institutional level.   See
        Sutton Decl. (Ex. 1) at 18; Administrative Remedy Generalized Retrieval
        (Attach. 1k to Ex. 1) at 161; Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for
        Administrative Remedy (Attach.  2bb) at 149-152.

44.     Washington did not submit an appeal to the Regional Office or the Central
        Office of Remedy ID 735155.  See Sutton Decl. (Ex. 1) at 18; Administrative
        Remedy Generalized Retrieval (Attach. 1k to Ex. 1) at 151-164.

45.     Remedy ID 742590-F1 received an explanation at the institutional level.   See
        Sutton Decl. (Ex. 1) at 19; Administrative Remedy Generalized Retrieval
        (Attach. 1k to Ex. 1) at 164.

46.     Remedy ID 742590-F1 alleged that a visual search was conducted in front of
        inmates.  See Sutton Decl. (Ex. 1) at 19; Administrative Remedy Generalized
        Retrieval (Attach. 1k to Ex. 1) at 164.

47.     The issue set forth in Remedy ID 742590 is not among the allegations raised in
        the complaint.  See Sutton Decl. (Ex. 1) at 19.

**D.     Plaintiff Kevin Lawson**

48.     Lawson is presently incarcerated at the Federal Correctional Institution in
        Pollock, Louisiana.  See Sutton Decl. (Ex. 1) ¶ 7.

49.     Lawson's administrative remedy records reflect that during his federal
        incarceration, he filed six administrative remedy requests and/or appeals.   See

Sutton Decl. (Ex. 1) ¶ 26; Administrative Remedy Generalized Retrieval (Attach. 1l to Ex. 1) at 167-172.

50.     Staff received four of Lawson's administrative remedy submissions prior to the commencement of the institution lockdown on February 25, 2013.  See Sutton Decl. (Ex. 1) ¶ 26; Administrative Remedy Generalized Retrieval (Attach. 1l to Ex. 1) at 167-170.

51.     Staff received Lawson's two remaining administrative remedy submissions after the institution lockdown ended on April 8, 2013.  See Sutton Decl. (Ex. 1), ¶¶ 27-28; Administrative Remedy Generalized Retrieval (Attach. 1l to Ex. 1) at 171-172 (Remedy IDs 735107-F1 and 735109-F1).

52.     Staff rejected both of Lawson's administrative remedy submissions received after the institution lockdown ended.  See id.

53.     Staff advised Lawson that he could correct the errors and resubmit his requests. See id.

54.     Lawson did not resubmit his requests nor did he appeal the rejections to the Regional or Central Offices.  See id.

**E.      Plaintiff Marvin Eduardo Castellano-Bayesillo**

55.     Castellano-Bayesillo's administrative remedy records reflect that during his federal incarceration, he filed 12 administrative remedy requests and/or appeals.  See Sutton Decl. (Ex. 1) ¶¶ 29-30; Administrative Remedy Generalized Retrieval (Attach. 1m to Ex. 1) at 175-186.

12

56.  Castellano-Bayesillo submitted five of his administrative remedy filings prior to the commencement of the institution lockdown on February 25, 2013.  See id. ¶ 29; Administrative Remedy Generalized Retrieval (Attach. 1m to Ex. 1) at 175-179.

57.  Castellano-Bayesillo submitted two administrative remedy filings during the lockdown.   See id. ¶¶ 29-30; Administrative Remedy Generalized Retrieval (Attach. 1m to Ex. 1) at 180-181.

58.  Staff rejected one of the two administrative remedy filings submitted during the lockdown (Remedy ID 726835-F1).  See Administrative Remedy Generalized Retrieval (Attach. 1m to Ex. 1) at 180.

59.  The second administrative remedy filing submitted during the lockdown (Remedy ID 723917-R1) requested jail credit and was denied.  See Administrative Remedy Generalized Retrieval (Attach. 1m to Ex. 1) at 181.

60.  Castellano-Bayesillo did not submit an appeal to the Regional Office or the Central Office of 723917-R1.  See Sutton Decl. (Ex. 1) at 21; Administrative Remedy Generalized Retrieval (Attach. 1m to Ex. 1) at 175-186.

61.  Five of Castellano-Bayesillo's administrative remedy filings were submitted after the lockdown ended on April 8, 2013.  See Sutton Decl. (Ex. 1) ¶¶ 29-30; Administrative Remedy Generalized Retrieval (Attach. 1m to Ex. 1) at 182-186.

62.  The five administrative remedy filings submitted by Castellano-Bayesillo after the lockdown ended alleged that (1) "needs glasses, medical taking [too] long,"

13

(Administrative Remedy Generalized Retrieval (Attach. 1m to Ex. 1) at 182);

(2) "[inmate] wants to participate in [Inmate Hearing Program]" (see id. at 183);

(3) and (4) "Unit team has paperwork incorrect" (see id. at 184-185); and (5)

"Got [no] answer to BP-10" (see id. at 186).

63.   None of the seven administrative remedy submissions filed by Castellano-

Bayesillo during and after the lockdown set forth issues that were raised in the

Amended Complaint.   See id. ¶¶ 29-30; Administrative Remedy Generalized

Retrieval (Attach. 1m to Ex. 1) at 180-186.

64.   Castellano-Bayesillo was released from BOP custody on February 7, 2014.

Sutton Decl. (Ex. 1) ¶ 8.

65.   Castellano-Bayesillo has not kept the Court informed of his address.  See  U.S.

District Court Civil Docket (Ex. 3).

66.   Castellano-Bayesillo  has not paid any monies toward the balance of his filing

fee since December 12, 2013.  See id.

**F.   Plaintiff Roscoe Alford**

67.   Alford's administrative remedy records reflect that during his federal

incarceration, he filed five administrative remedy requests and/or appeals.  See

Sutton Decl. (Ex. 1) ¶ 31; Administrative Remedy Generalized Retrieval

(Attach. 1n to Ex. 1) at 189-193.

68.   Alford submitted three of his administrative remedy filings prior to the

commencement of the institution lockdown on February 25, 2013.  See id.

¶ 31; Administrative Remedy Generalized Retrieval (Attach. 1n to Ex. 1) at 189-191.

69.  Alford did not file any administrative remedy filings during the lockdown.  <u>See</u> <u>id.</u> ¶ 31; Administrative Remedy Generalized Retrieval (Attach. 1n to Ex. 1) at 189-193.

70.  Alford submitted two administrative remedy filings after the lockdown ended on April 8, 2013.  <u>See</u> Sutton Decl. (Ex. 1) ¶ 31; Administrative Remedy Generalized Retrieval (Attach. 1n to Ex. 1) at 192-193.

71.  Staff rejected the first administrative remedy filed May 1, 2013, after the lockdown ended.  <u>See</u> Sutton Decl. (Ex. 1) ¶ 31; Administrative Remedy Generalized Retrieval (Attach. 1n to Ex. 1) at 192 (Remedy ID 733071-F1).

72.  Staff denied the second administrative remedy filed May 9, 2013, after the lockdown ended (Remedy ID 733071-F2), which  alleged Alford was being denied access to recreation.   <u>See</u> Sutton Decl. (Ex. 1) ¶ 31; Administrative Remedy Generalized Retrieval (Attach. 1n to Ex. 1) at 193; Fenstermaker Decl. (Ex. 2) ¶ 2; Requests for Administrative Remedy (Attach.  2cc) at 154-157.

73.  Alford did not appeal the denial to the Regional or Central Offices.  <u>See</u> Sutton Decl. (Ex. 1) ¶ 31; Administrative Remedy Generalized Retrieval (Attach. 1n to Ex. 1) at 189-193.

74.  Alford was released from BOP custody five months later, on October 4, 2013. <u>See</u> Sutton Decl. (Ex. 1) ¶ 9.

15

75.   Alford did not inform the Court of his change in address.  <u>See</u>  U.S. District
      Court Civil Docket (Ex. 3).

76.   On August 27, 2014, Alford's term of supervised release was revoked and he
      was returned to federal custody.  <u>See</u> Sutton Decl. (Ex. 1) ¶ 9.

77.   Alford did not inform the Court of his change in address.  <u>See</u>  U.S. District
      Court Civil Docket (Ex. 3).

78.   Alford has not paid any monies toward the balance of his filing fee since June
      14, 2013.  <u>See</u> <u>id.</u>

**G.   <u>Plaintiff John LeGrand</u>**

79.   LeGrand's administrative remedy records reflect that during his federal
      incarceration, he filed 14 administrative remedy requests and/or appeals.  <u>See</u>
      Sutton Decl. (Ex. 1) ¶ 33; Administrative Remedy Generalized Retrieval
      (Attach. 1o to Ex. 1) at 196-209.

80.   LeGrand submitted twelve of his administrative remedy filings prior to the
      commencement of the institution lockdown on February 25, 2013.  <u>See</u> <u>id.</u>
      ¶ 33; Administrative Remedy Generalized Retrieval (Attach. 1o to Ex. 1) at
      196-207.

81.   LeGrand submitted the two remaining administrative remedy filings after the
      lockdown ended on April 8, 2013.  <u>See</u> Sutton Decl. (Ex. 1) ¶ 34;
      Administrative Remedy Generalized Retrieval (Attach. 1o to Ex. 1) at 208-209.

82.   Both administrative remedies submitted after the lockdown concerned disciplinary action taken against LeGrand as the result of an incident that occurred on January 31, 2013, prior to the institution lockdown.   <u>See</u> Sutton Decl. (Ex. 1) ¶ 34; Administrative Remedy Generalized Retrieval (Attach. 1o to Ex. 1) at 208-209.

83.   Neither of the administrative remedy submissions filed by LeGrand after the lockdown set forth issues that were raised in the Amended Complaint.   <u>See</u> Sutton Decl. (Ex. 1) ¶ 34; Administrative Remedy Generalized Retrieval (Attach. 1o to Ex. 1) at 208-209.

84.   LeGrand is presently incarcerated at USP Coleman in Florida.   <u>See</u> Sutton Decl. (Ex. 1) ¶ 10.

**H.   <u>Plaintiff Eric Gay</u>**

85.   Gay's administrative remedy records reflect that during his federal incarceration, he filed 23 administrative remedy requests and/or appeals.   <u>See</u> Sutton Decl. (Ex. 1) ¶¶ 35-36; Administrative Remedy Generalized Retrieval (Attach. 1p to Ex. 1) at 212-234.

86.   Gay submitted seventeen administrative remedy filings prior to the commencement of the institution lockdown on February 25, 2013.   <u>See</u> <u>id.</u> ¶¶ 35-36; Administrative Remedy Generalized Retrieval (Attach. 1p to Ex. 1) at 212-228.

17

87.   Gay filed two administrative remedy filings during the lockdown.   See id.

¶¶ 35-36; Administrative Remedy Generalized Retrieval (Attach. 1p to Ex. 1) at

229-230.

88.   Staff rejected one of the two administrative remedies and one concerned

halfway house placement, which is not an issue set forth in the Amended

Complaint.  See id.

89.   Gay filed the remaining four administrative remedies after the lockdown ended

on April 8, 2013.  See Sutton Decl. (Ex. 1) ¶¶ 35-36; Administrative Remedy

Generalized Retrieval (Attach. 1n to Ex. 1) at 231-234.

90.   Staff rejected two of the four administrative remedies Gay submitted after the

lockdown.  See Sutton Decl. (Ex. 1) ¶¶ 35-36; Administrative Remedy

Generalized Retrieval (Attach. 1n to Ex. 1) at 233-234.

91.   An administrative remedy appeal filed by Gay on April 15, 2013, concerned

halfway house placement (Remedy ID 721978-A1) which is not an issue set

forth in the Amended Complaint.  See Sutton Decl. (Ex. 1) ¶¶ 35-36;

Administrative Remedy Generalized Retrieval (Attach. 1n to Ex. 1) at 231.

92.   An administrative remedy request filed by Gay on May 20, 2013, at the

institutional level (Remedy ID 735159-F1), complained that medical staff had

not seen Gay.  See Sutton Decl. (Ex. 1) ¶¶ 35-36; Administrative Remedy

Generalized Retrieval (Attach. 1n to Ex. 1) at 232.

93. Remedy ID 735159-F1 received an explanation at the institutional level on May 29, 2013. <u>See</u> Sutton Decl. (Ex. 1) ¶ 36; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 232; Fenstermaker Decl. (Ex. 2) ¶ 2; Request for Administrative Remedy (Attach. 2dd) at 159-162.

94. Gay did not appeal the institutional response to either the Regional Office or Central office. <u>See</u> Sutton Decl. (Ex. 1) ¶ 36; Administrative Remedy Generalized Retrieval (Attach. 1j to Ex. 1) at 212-234.

95. On November 13, 2013, Gay was released from Bureau of Prisons custody. <u>See</u> Sutton Decl. (Ex. 1) ¶ 11.

96. Gay has not kept the Court informed of his change in address. <u>See</u> U.S. District Court Civil Docket (Ex. 3).

97. Gay has not paid any monies toward the balance of his filing fee. <u>See</u> <u>id.</u>

**I.    <u>Allegations In The Complaint</u>**

98. Plaintiffs allege that, after the homicide of a Correctional Officer at USP Canaan, the institution was locked down, and they were subjected to harassment, physical, psychological and sexual abuse by staff. They also allege that staff interfered with their legal and general correspondence, and confiscated and destroyed their personal property. They contend this was all done in retaliation for the homicide of a Correctional Officer at USP Canaan. <u>See</u> Am. Compl. (Doc. 13).

99.     Specifically, in Claim Two of their Amended Complaint, Plaintiffs allege that
        on March 4, 2013, Defendant Heenan and another correctional officer directed
        Plaintiff Hill to submit to handcuffs while they conducted a cell search and that
        the handcuffs were applied in an overly-tight fashion.   See id. at 3 (Claim
        Two).  They allege after Plaintiff Hill was removed from the cell, Defendant
        Heenan "ransacked" the cell and destroyed Hill's legal and administrative
        remedy documents.  See id.  They allege Defendant Heenan removed
        "everything" from the cell and that, when Plaintiff Hill requested to speak with
        a lieutenant, Defendant Schwartz yelled and screamed and entered Hill's cell.
        See id.  They allege that Defendant Schwartz pushed Plaintiff Hill with
        sufficient force that Plaintiff Hill's head struck against a wall.  See id.  They
        allege while waiting for an inmate to be placed in Plaintiff Hill's cell, Defendant
        Schwartz ground his fist into his palm and that, when the cell door was opened
        for the other inmate to enter, Defendant Schwartz rushed into the cell,
        slammed Plaintiff Hill's head into the wall, reached into Plaintiff Hill's
        jumpsuit, and grabbed, squeezed and pulled upon inmate Hill's genitals.  See id.
        at 3-4.

100.    In Claims Three and Four of their Amended Complaint, it is alleged that
        Plaintiffs Cercet and Washington were separately beaten, slammed to the
        ground, punched, kicked, and spat upon by unknown officers.  See id. at 4-6.
        They allege that while Plaintiffs Cercet and Washington were being beaten, an

20

officer stated, "this is for Eric Williams" and grabbed, squeezed and pulled upon Plaintiff Cercet and Washington's genitals.   See id.

101.   In Claim Five, Plaintiffs allege that health service staff failed to provide medical attention after "each of these incidents" (presumably for Plaintiffs Hill, Cercet and Washington).   See id. at 6.

102.   In Claim Six, it is alleged that Plaintiffs Hill, Cercet, and Washington suffered a pattern of abuse and assault in retaliation for filing administrative remedies and complaining about the conditions at USP Canaan.   See id. at 6-7.  They allege after Plaintiff Hill filed written complaints with Defendant Ebbert and Defendant Oddo, staff would search his cell and confiscate all of his personal property.   See id. They allege the light would be kept on in Plaintiff Hill's cell for 16 straight hours, and staff would kick his door to prevent Plaintiff Hill from sleeping.   See id.   They allege that when Plaintiffs Cercet and Washington requested administrative remedy forms, a red tag was placed on their cell doors, and they were beaten.   See id.

103.   In Claim Seven of the Amended Complaint, Plaintiffs claim that in January and February 2013, Plaintiffs Hill and Castellano-Bayesillo sent over ten pieces of mail, and each time, officers opened the legal mail and confiscated documents they tried to mail.   See id. at 7-8.  They allege that on March 4, 2003, at about 2:00 a.m. or 3:00 a.m., staff opened two pieces of outgoing Special Mail Plaintiff Hill had submitted for mailing.  They allege that after the officers

opened Plaintiff Hill's legal mail, they turned on his light, and it remained on for four nights thereafter.  See id.

104.    In Claim Eight alleges that officers confiscated "numerous prisoners'" property and clothing in retaliation for the filing of complaints against staff.  See id. at 8. There are no indications that any of the Plaintiffs were subjected to these claims.  See id.

105.    In Claim Nine, it is alleged that, between March 5, 2003, and June 6, 2013, Plaintiffs Hill's and Lawson's cells were searched twelve times (sometimes two cell searches were conducted on the same day) and their administrative remedy forms were confiscated each time.  See id. at 8-9.  They allege that, on March 24, 2013, either Plaintiff Hill's or Plaintiff Lawson's BP-8 forms were confiscated by staff.  See id.  On March 26, 2013, Plaintiff Hill's BP-9 forms, a motion for appointment of counsel, and a "responsive motion" were confiscated "along with several cases he had received."  See id.

106.    In Claim Ten of the Amended Complaint avers that Plaintiff Alford's cell was "ransacked" at least seven times between March 5, 2013, and June 6, 2013, and Defendants Burns, Kubicki and Hayden confiscated handwritten copies of the complaint in this civil action as well as pencils and toilet paper.  See id. at 9.

107.    Claim Eleven avers that Plaintiffs Washington's and Cercet's cells were searched twice a day for three weeks, that staff vandalized their personal

22

property by pouring shampoo over their sheets, blankets, and floor, and that

staff stole all their pencils and postage stamps.  See id. at 9-10.

108.   Claim Twelve, the Amended Complaint alleges that Plaintiff Legrand's cell was

searched and vandalized and he was made to wear paper clothes for four days.

See id. at 10.  It is further alleged that Defendant Kubicki confiscated Plaintiff

LeGrand's personal hygiene products and laughed at and mocked Plaintiff

Legrand.   See id.

109.   Claim Thirteen claims Plaintiff Castellano-Bayesillo's cell was searched six

times, and during each search, staff ransacked his cell.  See id. at 10.  They

allege he was issued paper clothes to wear for four days, and his books, pictures

and a handwritten copy of the complaint was stolen.  See id.

110.   Claim Fourteen avers that Unit Teams failed to conduct Special Housing Unit

(SHU) rounds, refused to provide administrative remedy forms, refused to

process complaints about Unit Team staff, and destroyed administrative

remedy forms.  See id. at 10-11.  It is also alleged that Defendant Lindsay

instructed a correctional counselor to stop providing administrative remedy

forms to Plaintiff Hill.  See id. at 11.  After that, the counselor told Plaintiff Hill

that he would only provide one administrative remedy form at a time to him

"and process only one BP-9 a week."  See id.  It is further alleged that

Defendant Sample did not conduct SHU rounds with administrative remedy

forms to provide to inmates assigned to his caseload and that Defendant

23

Tomaino instructed inmates to re-submit their informal resolution forms because she had lost them.  See id. at 11-12.  Additionally, they allege that when Plaintiff Lawson asked for two or three informal resolution forms, Defendant Tomaino told him she was not going to process them.  See id. at 12.  When Plaintiffs Cercet, Washington, and Alford requested forms, counselors refused to provide the forms.  See id.  Plaintiffs allege that when Plaintiff Castellano-Bayesillo asked for informal resolution forms, Defendant Durkin denied him the requested forms, stating "No English, no form."  See id.  It is further alleged that Defendant Gubbiotti "almost never does SHU rounds," and the one time Plaintiff Castellano-Bayesillo saw him and requested an informal resolution form, he said he had no forms and would send someone down with the forms.   See id. at 12.  Plaintiffs aver "[t]here is a pattern and practice at USP Canaan of not providing administrative remedy forms and retaliating against prisoners who file complaints."  See id. at 12-13.

111.  Claim Fifteen, Plaintiffs allege Defendant Burkett refused to appoint a medical provider to do sick call rounds in the SHU or provide over-the-counter medication.   See id. at 13.  They allege Plaintiffs Washington and Cercet never received any medical attention for complaints of sore ribs, head injuries, swollen eyes, dizziness, and eating problems, "after these prisoners were brutally assaulted."  See id.  Plaintiff Hill alleges he was denied an inhaler and nebulizer treatment for four weeks for his asthma.  See id. at 13-14.  It is also

averred that Plaintiffs Lawson, Castellano-Bayesillo, Alford, Legrand and Gay's requests for medical attention were ignored.   See id.

112.   Claim Sixteen of the Amended Complaint states Defendant Trently opened Plaintiff Hill's legal mail outside of his presence.   See id. at 14.   It also alleges Plaintiff Cercet's legal mail was delayed five days, and Plaintiffs Hill's and Alford's legal mail was not properly processed.   See id.   It is averred that unknown staff removed exhibits from legal mail sent by Plaintiff Hill's attorneys and that Plaintiffs Hill's and Legrand's legal mail that was sent to several courts was opened and destroyed.   See id.   Additionally, Plaintiff Hill was told by Defendant Trently that mail from the United States Court was not "legal mail."   See id.

113.   Claim Seventeen, Plaintiffs allege Defendant Sudul was present when Defendant Rosencrance assaulted Plaintiffs Cercet and Washington, and failed to stop the assault.   See id. at 16.   They allege Defendant Sudul allowed SHU officers to conduct cell searches in abusive ways.   See id.   They claim no pencils were issued for over a month during the lockdown, that Plaintiffs were "forced to retain piles of trays and garbage in their cells," "forced to wear the same underwear day after day," and "subjected to constant retaliation for complaining, and denied basic essentials for humane treatment."   See id.

114.   As relief, Plaintiffs request a preliminary injunction directing USP Canaan to retain copies of video surveillance footage from Unit B-1 for March 5, 2013, as

25

well as video surveillance from all corridors and the medical department.  See

id. at 17.  They also request that video surveillance from the Upper SHU range

(C-upper) for March 4, 2013, between 6 am until 5 pm be preserved, that USP

Canaan staff be ordered to use hand held cameras whenever moving an inmate

from their cell and to have a lieutenant present until the lockdown is over.  See

id.  Plaintiffs further request that "all staff involved in excessive force" be

banned from working around prisoners until an investigation is completed.

See id.  In addition, Plaintiffs seek unspecified compensatory and punitive

damages.  See id.

<div style="margin-left: 40%;">

Respectfully submitted,

PETER J. SMITH
United States Attorney

s/ Michael Butler
Michael Butler
Assistant United States Attorney
PA 81799
Michele E. Lincalis
Supv. Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17703
Tel:  717-221-4482
Fax: 717-221-2246
Michael.J.Butler@usdoj.gov

</div>

Date:  October 10, 2014

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEMETRIUS HILL, et al.,** | : | **No. 4:13-CV-0668** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Brann, J.)** |
| | : | |
| **WARDEN DAVID EBBERT,** | : | |
| **et al.,** | : | |
| **Defendants** | : | **Filed Electronically** |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on October 10, 2014, she served a copy of the attached

## STATEMENT OF MATERIAL FACTS

by placing said copy in a postpaid envelope addressed to the persons hereinafter named, at the places and addresses stated below, which are the last known addresses, and by depositing said envelopes and contents in the United States Mail at Williamsport, Pennsylvania.

Demetrius Hill[2]
Reg. No. 68133-053
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA  17837

---

[2] According to BOP records, Plaintiff Hill is now confined to USP Lewisburg on a writ.

Nestor Cercet (not served, address unknown)

Anthony Washington
Reg. No. 41756-050
U.S.P. Canaan
P.O. Box 300
Waymart, PA  18472

Kevin Lawson
Reg. No. 41004-037
U.S.P. Canaan
P.O. Box 300
Waymart, PA  18472

Roscoe L. Alford
Reg. No. 55931-060
FCI Gilmer
P.O. Box 6000
Glenville, WV  26351

John F. Legrand[3]
Reg. No. 47009-037
U.S.P. Coleman I
P.O. Box 1033
Coleman, FL  33521

Marvin Castellano Eduardo (not served, address unknown)

---

[3] According to www.bop.gov, Plaintiff Legrand is now confined to USP Coleman I.

28

Eric Gay (not served, address unknown)

<u>s/ Michele E. Lincalis</u>
Michele E. Lincalis
Supv. Paralegal Specialist